We will call the matter of the United States of America v. John D. Corso III. Ms. Cain. Thank you. Good morning. My name is Candace Cain and I represent John Corso, the defendant below. I ask to reserve three minutes of rebuttal. That request will be granted. John Corso pled guilty to theft of mail and he is to be punished for that. The question in this case is whether he should receive an enhanced punishment and the question is regarding two enhancements. One is reserved for employees of the United States Postal Service. That says that a two-point enhancement is to be applied automatically for those employees who commit theft of mail. The other enhancement is for people who take mail from a United States Postal Service delivery vehicle and under this presumption that applies in that enhancement, four points were added to Mr. Corso's offense level. So these two enhancements really doubled his offense level from six for theft of mail to 12 when you add the two and the four points. Can I have you shift for a minute? There's an appellate waiver in this case. Was it knowing involuntarily entered into? No, Your Honor, it wasn't. I like to call it a partial appellate waiver because it did not foreclose all appeals. But you're right. I believe that there was no knowing involuntary waiver in this case because the colloquy was so inadequate, I guess. It appeared to be sort of a rushed proceeding, and the judge did not even himself go over the waiver with Mr. Corso. I think it was the AUSA who said something like the standard waiver provision. Right, and they didn't even talk about it. And he signed a waiver, did he not? He signed a plea agreement, Your Honor. Signed a plea agreement. It had the waiver in it. It contained the waiver. But it also contained some other provisions that are really important. Sure, the exceptions. You're not arguing that either of these enhancement questions fall within those exceptions, are you? Oh, yes, it's all tied together, Your Honor. All tied together? Yes. Let's talk about Judge Shigaris' question first. You're saying that the waiver was not knowing involuntarily. Right. The waiver wasn't knowing involuntarily because the Rule 11 colloquy really wasn't adhered to. Isn't what we have here a violation of the Rule 11 colloquy? Yes. In that the district court didn't specifically read the provision of subsection N? Yes. Okay, that's what we have. Now, does that – and that wasn't objected to below, was it? No, there was no objection. So what's our standard of review here? It would be plein air. Plein air. But the language – Now, I'm going to try to take you through this. It wasn't objected to below. We have a plein air review standard. But he signed the plea agreement, which contained the waiver of appeal provision. It was a partial waiver. It only waived part of his ability to appeal. Okay, but there was – okay. The issues in this case – Let me ask one other question. And the assistant United States attorney at least made some reference to the appeal waiver included in the plea agreement. Now, how do you get to the merits based on that factual situation? Well, the language in the plea agreement, which was drafted by the government, not only has that partial waiver, which does allow an appeal under certain circumstances, but it also included that the defendant would be sentenced under the Sentencing Reform Act. It also included that the court would consider the United States sentencing guidelines. And part of considering the United States sentencing guidelines is to have a correct starting point, as we know from the three-step process in Gunter. And that correct starting point is necessary in this case to give effect to the partial waiver. The partial waiver allows Mr. Corso to appeal a sentence that unreasonably exceeds the guideline range determined by the court under the sentencing guidelines. How can we know whether the guideline range unreasonably exceeds the guidelines unless we start at the correct place? Here, the error is dramatic. The mistake is so obvious. If you look at the two enhancements, they both require that the person be an employee of the United States Postal Service, and it's in all caps, I mean initial caps, in the guidelines. And the same with the delivery vehicle. It's a delivery vehicle of the United States Postal Service. The United States Postal Service is a unique entity in our government. And certainly the guidelines can distinguish or rather broaden the application of the enhancement by saying that it can be a United States Postal mailbox or. I know you want to get to that substantive part, and you're doing your best, but you still don't want to answer our question is how do you get there? Do you have a case to tell us that what took place here gets you within one of the exceptions of the appeal wave? Well, I believe the case, the Third Circuit case of Paddock, which talks about the importance of the Rule 11 colloquy is the case that would apply, and that there was also conflicting information from the court at sentencing. The judge basically told Mr. Corso that he could appeal. And this was after. Isn't the court required to at the end of the sentencing give the defendant the notice that he has a right to appeal? How limited that may be. In this case it was more limited than in some cases. Right, but this was in conflict supposedly with this waiver. The judge never really explained to the defendant ever about the waiver. But Rule 32 requires that. I'm sorry? Right, but the court could also explain about the waiver, and that was sort of conflicting information. Are you arguing this is a miscarriage of justice? Is that your way around this? Well, if the court finds that this waiver, the partial waiver, was knowing involuntary, then yes, I would argue that this is a miscarriage of justice because the mistakes were so obvious and so plain. And what I was mentioning earlier about the guidelines do broaden the definition of mailbox in certain circumstances. If you look at the guideline that talks about the delivery vehicle, that limits that delivery vehicle to one of the United States Postal Service, right below it it talks about mailboxes that are part of apartment complexes or whatever. And in that it basically states that the receptacle is owned by the United States Postal Service or otherwise owned. So the guidelines do know how to broaden the definition. And here the judge basically, with a contract employee of a private truck company, assigned enhancements to him as though he was an employee of the United States Postal Service. And that really just isn't permitted. I mean, it's just an obvious mistake on the part of the court. And the waiver here – What's obvious about – it doesn't say the truck has to be owned by the Postal Service. Basically it does because the delivery vehicle – Where does it say that the Postal Service has to own the truck? Well, the guideline applies to United States Postal Service delivery vehicles. And it's not really ambiguous. Why couldn't that include United States Postal Service delivery vehicles by contract as opposed to by own? Are you saying that if the Postal Service leases a fleet of trucks and they paint United States mail on the side of it, that that's not a Postal Service truck? Well, that's a little different factually from here. I know it is. I'm asking you what's your answer to the question. I think that if it's identified as a United States Postal Service delivery vehicle, that might change the outcome somewhat. So if it has the red, white, and blue with the eagle and it says United States Postal Service, that qualifies? That's closer than what we have here, which is just a private truck. In fact, it's white and hasn't been painted yet, but it's owned by the Postal Service. Again, that would have to be – I think there would have to be some identification on the truck itself that it is a United States Postal Service. So your argument is if it's not identified and it's owned by the Postal Service, the enhancement does not apply. I think there's a problem with it. If it is identified and leased, not owned by the Postal Service, the guideline enhancement doesn't apply. The only time the guideline enhancement applies is if it's owned by the Postal Service, it's painted Postal Service on the truck. That's the only time the guideline applies. The purpose of this is to protect the Postal Service property. Like the mail that your client rifles. Well, that enhancement is for him, and he is not a Postal Service employee. Well, that's the second one. The second one talks about employee. The first one just says United States Postal Service truck. It says Postal Service truck. It doesn't say owned by the Postal Service. Well, then what does that modifier mean, except that it must mean the United States Postal Service delivery vehicle? Because in the section below it, when it talks about United States Postal Service receptacle, it says whether such receptacle is owned by the United States Postal Service or otherwise owned. And so in that section, they do broaden the definition, whereas when we're talking about a delivery vehicle, they have not broadened it. Well, I mean, if owned is used in the very next paragraph, couldn't you make an argument that since it's not used in the paragraph before, owned shouldn't be the standard? Well, it has to be that it is not really ownership. It is a United States Postal Service delivery vehicle, not that it is a private truck under contract with the Postal Service. It has to be a United States Postal Service delivery vehicle. And the two enhancements are dramatic. They double the base offense level, as I mentioned. And they really, the two enhancements clearly state that the delivery vehicle is a United States Postal Service delivery vehicle and that the enhancement applies to employees, the position of trust enhancement applies to employees of the United States Postal Service. And the guideline could have been written differently. It could have just talked about the mail, but it did not. It specifically limited it to those circumstances. And the waiver really only, the partial waiver only waives the appeal to the extent that you cannot show an error. And here he can show that error. All right, we'll have you back on rebuttal. Ms. Irwin? May it please the Court, Laura Irwin from the U.S. Attorney's Office, on behalf of the government. This Court should affirm the decision of the District Court. As a preliminary matter, that result should obtain, because in this case, Mr. Corso entered into a plea agreement that contained a waiver of his appellate rights, whether we call it partial or otherwise. And that waiver, as this Court well knows, may deprive this Court of the opportunity to exercise its jurisdiction. As the Court said in Gwinnett, we have jurisdiction to hinder the appeal, but it's the defendant's burden to convince us to exercise that. In this case, the opening brief filed by Mr. Corso made no reference to the waiver and made no effort to convince us. Could that be a requirement? Well, it certainly is a requirement to the extent that if you don't raise an issue in your opening brief, it's considered waived. This Court's held that in many, many circumstances. But if you're asking about whether there should be an opinion out there that says it's required, I think in all candor that an attorney owes to the Court, it's an issue. It's an issue under Rule 28J of the Federal Rules of Appellate Procedure. It has to be decided. This Court has to establish its jurisdiction first. Some of the U.S. Attorney's offices, as more of a routine, file motions for summary dismissal where waivers are in place. And that's not to say that your office does not in some cases. Do you have any comment on whether or not that is a preferred or non-preferred procedure? It's an approach that we've been looking at. It's one that we've started to do a little bit. Our concern is, in all honesty, it's one of practicality. Are we going to still have to file a full brief? Does it really save us any time? And is it ever going to get the issue out there that when there's a waiver, it's the defendant's burden to establish that that waiver should be set aside. So it's one under discussion. We're starting to use it a little bit, but it's very difficult to convince ourselves that we're really going to save ourselves any time by doing it that way. Well, if, and not holding that practical decision against you. We can ask Mr. Eberhardt. He's sitting, so he can hear what we're saying. You can answer for him. If it's a practical time consideration and you choose not to file the motion for summary dismissal, do you think then that the defendant should have the burden of raising it in their opening brief? I do. I think it's plain under Rule 28J of the Federal Rules of Appellate Procedure. Did you allege that in your brief, that they've waived it? I didn't see that. Actually, I think it's raised in a less-than-clear method in that brief. The court may be aware that brief was authored by a different member of the section. The language may have been different. It had a different person done it. But I think it is clear in there that we make it apparent to the court that there was a waiver that is not mentioned in the brief. I know you make it clear. I was just questioning, and Judge Hardiman showed me the second section. But go ahead. In any event, our position is that this court should just affirm the decision of the district court because the defendant didn't even try to meet his burden and therefore did not make his burden to convince this court to exercise its jurisdiction over this appeal. To the extent that this court would, for some unusual reason, decide to put that aside, keep in mind that even in the reply brief, the defendant offered no reason for their decision to not put it in their opening brief. So to the extent that there's cases out there that say that those types of omissions in an opening brief can be ignored, there has to be some sort of exceptional circumstance. We don't even have that here. But nonetheless, going to the issue of knowing and voluntary, Judge DeGarza, I'd like to get to your question about, you know, how do we get over that or what does the defendant need to get there. But first I'd like to... Well, in particular with the Rule 11 noncompliance, I guess you could say. Right. I'd like to go through why we believe that the colloquy was proper and then show what the defendant says is his reason to get over that. Okay. We believe it's proper for a number of reasons. You're right. It's Rule 11 requires the district court to discuss the agreement and, you know, the rule's very long and to determine that the defendant understands what's going on. In this case, from beginning to end, we have the district court saying to the defendant, do you understand what I'm talking about at the beginning of the colloquy? If you don't understand my questions, please let me know. If you need time to consult with your lawyer, I will make a time and a place available for you. It's extremely important that you understand what I'm saying. We go through the colloquy, the AUSA reads it, and that's true. The AUSA is the one that reads it, but there's never been a case that I found from this court that's published or even unpublished that says it must be the district court that reads it. After the AUSA reads it, the next question by the district court is directed to the defendant with regard, in particular, to the waiver. He says, this is on page 29 of the record, sir, you heard Mr. Hall talk in terms of the level of reduction and the like pertaining to the guidelines. Do you understand that the guidelines are not mandatory on me, that they are advisory only, and I'm not obligated to sentence you within the guideline range? He's going directly to the waiver there. It's very similar to what happened in Gwinnett. What happened was the provision was read by the AUSA, and the next question from the district court in Gwinnett was, you recognize that we're not going to wait for Booker to set the sentence. You're not going to bring a Booker reasonableness claim after we set the sentence. True, but is that what Rule 11 says, though? Don't you need to have a knowing waiver of your right to appeal the sentence? Well... I understand he's asking a question about sentencing, but... The rule says, determine that the defendant understands. And I agree with you. I mean, I cannot deny that the district court did not say, do you understand this waiver? But again, that's never been required by this court. And we know from the rest of the record that the defendant did understand that. This plea agreement was dated March 7th, I believe. This hearing didn't take place until two months later. He apparently signed it on that date. And there's a provision in that letter that says, I received this letter from my attorney, I've read it, I've discussed it with him, I hereby accept and acknowledge that it fully sets forth my agreement, etc., etc. I affirm there have been no additional promises or representations made to me by the United States in connection with this matter. When you look at that in toto, when you look at all these things, this was given to the district court. The plea agreement was provided to the district court after the AUSA read it. The district court knew that this is what had transpired. There can be no doubt that this defendant had read this and understood it and discussed it with his lawyer, which is everything that's required under the case law with regard to a knowing and intelligent waiver of appellate rights. Your adversary rightfully pointed out that our case in Caddock, I guess it is, states that in determining whether a waiver of appeal is knowing and voluntary, the role of the sentencing judge is critical and sets forth the Rule 11 obligation of the judge, which may not have happened. And that's true. But again, this court has never said, the sentencing judge must be the one to mention the appellate waiver. There's no doubt that this defendant heard about the appellate waiver and that he discussed it with his lawyer and he understood what was going on. The defendant's response is, and keep in mind, there was no Rule 11 objection made at the district court. There was no motion to withdraw his guilty plea. So we're on this plain error with the added layer of never been raised. But the defendant's response is, but for this error, and I'm not even sure what the error is other than the district court wasn't the one that stepped in the shoes of the AUSA and said you have an appellate waiver. He says, but for that error, there's a reasonable likelihood that I would not have entered into the plea, and that is because the only benefit I received was the dismissal of four counts, which really wasn't a benefit because under the grouping rules, they would have been grouped together. Let me move on a little bit because your time is fleeting here. Could you respond to your adversary's comment about, or I assume we get through all that, how do we get, and she tells us we can get to the merits, I suppose by an exception, one of the three exceptions, as well as if it's manifestly a miscarriage of justice. Yeah. Maybe you could address that, whether, even if she is able to succeed on either of her more substantive arguments, does that get her around this waiver? No, it doesn't for two reasons. One is the statute I provided to the court in my 28J letter, which is Title 39-1008, which says that contract employees are considered employees for purposes of 1708, which is the statute he was prosecuted under. And the second reason is I would, and we can talk about. Let's assume she's right. Let's assume she's right. Just assume it. Can she get around this appellate waiver? No, she can't. But I'm sorry, I thought you wanted me to answer the merits of it. No, actually, I'm interested. I mean, I think she argued that it was possibly a miscarriage of justice. We don't, looking beyond the agreement into the merits. No, it's our position that it's not. And one reason is because as a matter of law, he's considered an employee. And the second is if you look at the indictment in this case and the actual plea where he pleads guilty to the count of the indictment, count one, make it clear that as a matter of function and almost as a matter of pure form, he was acting as an employee of the Postal Service. The indictment alleged that he was a driver employed by the T. Wilson Trucking Company who regularly carried United States mail matter, did steal and take from a container used for the purpose of transporting United States mail matter. At the plea colloquy, the government represented to the district court that we would show that he stole mail matter described in the indictment, that he did it while it was under the authority of the Postal Service, and he did it knowingly and willfully with the intent to steal. The district court then said to Mr. – and that's at page 26 – then said to Mr. Corso, did you, while employed by the trucking company who regularly carries U.S. mail, steal mail matter from a container used for the purpose of transporting mail? There can be no doubt when you look at those things combined that those enhancements were properly assigned in this case. So there's no – manifest injustice isn't just error. It has to be blatant error. Let's assume we don't agree with you on one or the other counts. Would that constitute the type of error that you – well, would that be miscarriage of justice? We don't agree with you on a legal proposition, one of the two. No. Well, first of all, you can't even get there because the defendant has not established this court's jurisdiction over the matter. Let's assume – Judge Shigaris, let me ask it slightly differently. If we disagree with you on one of the enhancements and say one of the enhancements does not apply, is that a miscarriage of justice? I think not. I don't think just a simple error of application of a guideline amounts to the blatant error that's required under a miscarriage of justice analysis. The miscarriage of justice is a very narrow area. It's limited to a sentence that's over the statutory maximum, a sentence that's imposed in violation of some constitutional protected rights, such as race. It's not for just your average error. It has to be a blatant error. And we believe it was reasonable for the district court to have acted, and it may well be reasonable for this court to disagree, but reasonable minds can disagree, and that does not amount to a blatant error. Doesn't it depend on the magnitude of the guideline's error? I mean, I assume you're not arguing that if someone is erroneously placed in a criminal history category 5 or 4 instead of 1, resulting in a tenfold increase in the guideline's range, I assume you're not arguing that that would not be manifest injustice. And you're right. It may be, but in this particular case, the bottom line is this defendant received a fair sentence, the one at the bottom of the guideline range. And although his guideline's calculation might change, the sentence itself I believe remains reasonable given his conduct and the fact that he was entrusted with the mail. Well, that can't be right, though. It can't be reasonable because under our precedent, if the guideline's calculation is wrong, there's a procedural unreasonableness. That doesn't mean it's substantively unreasonable, but it means that there's procedural unreasonableness. That's true. So if it's procedurally unreasonable, how does that relate to the high threshold of manifest injustice? That's an interesting question. I hadn't really actually thought about it in those terms. I believe there could be an issue as to whether or not that would arise to a manifest injustice, but I don't believe that's, A, an argument the defendant has actually made in any clear way. And second of all, aside from the waiver issue, I'm not sure, again, that just because something's a clear error that it amounts to a blatant error. I just see a conflict between. Well, it might be a clear error, but it might not be that meaningful. That's why I asked the question about the magnitude of the error. If it's a one-point enhancement, a two-point enhancement, for example, in this case, in many cases, the case that was just argued previously, if the guideline range is adjusted, you still may end up with the ultimate sentence being still within the guidelines range. It just moves from the bottom of the range up to the top of it. That's correct. I think what this case would turn on is if the court would reject both enhancements, you probably would have an issue where it would reach a manifest injustice because it would take him out of the range that he was in, whereas if you leave one and not the other, you'd have to look at each independently to see where that leaves you. But I think your point is a correct one, that the magnitude of the error could be the key to whether or not there could be a miscarriage of justice. If there's no other questions. I have another question, actually. Are you familiar with the case U.S. versus Ikeuchiwu, the Fifth Circuit? Yes, I found that yesterday. Yeah. Why shouldn't we follow that? That, I believe, holds that if we apply that case here, I think one of your arguments is in trouble on whether a contractor is an employee of the USPS. I don't know that I bought that one up with me. If you could refresh my memory on the – oh, that was the one that had the footnote. He was the courier, right? Yes. Okay. The difference is that, well, first of all, there's a footnote in that case where the panel says we're not even going toward a contract employee. And there's no dispute in this case that we have a contract employee. Okay. And, again, I think it's a question of – I'm not sure in that case who employed the courier. I think it was actually the bank that employed the courier. So I'm not sure that the duty and the importance of the U.S. mail attaches to someone who is that far removed from the mail process. But if you'd like, I'd be happy to submit a 28-J that gives you certainly more thoughtful analysis. Well, that was – If you think such a submission is necessary. I'll do that. Are there any other questions? That's all we have.  Thank you. Thank you. Ms. Cain, Counsel for the Government says that you waived your right to bring up the lack of knowing and voluntariness of the appellate waiver by not raising it in your opening brief. What would you have to say to that? Well, I would say that I did not waive it because the waiver was not a total and complete waiver of all appellate issues, all appellate rights. It was a partial waiver, and the appellate issues being raised here are not included in that waiver. What if we find that it was included in the waiver? Well, then I would say that I suppose I'm ineffective, and then we would be back here on another day. No, no, we're not saying you're ineffective. We're saying that what if you had not – you obviously didn't raise it. Right, I did not. And if we find that your issues didn't fall within one of the exceptions within the appellate waiver, does the fact that it was not raised in the opening brief constitute a waiver? No, no, it does not because it would be the government's burden to argue that I have waived the appeal in this particular case where there is this partial waiver. Well, but they didn't have a chance because the only time you raised it was in your reply brief, and they didn't have the opportunity to file a serve reply brief, but today they said that you waived it. Well, they said that in their brief that I waived it. They are the ones that brought it up. Okay, they said you waived it, yes, and now you're saying they didn't say it. Well, they did say it. Oh, they did say it, but I'm just saying that I did not waive it because the appellate issues that I am raising are not included in the partial waiver that is the subject of this case. But if we conclude that the appellate issues you're raising were included within the appellate waiver, is the government right that you waived it by not raising it in your opening brief? No. I don't think the defendant is obligated to raise in his opening brief the waiver issue, especially in this case. Isn't it good practice, though? I mean, isn't it good practice to tell this court, my client signed a plea agreement. That plea agreement contains an appellate waiver. That appellate waiver does not apply to us. Here's why. It seems so basic. Well, there are lots of problems in cases, and you don't always bring up every problem that might occur. That's a big problem. It's a whopper. It's kind of a threshold, right? Well, this particular waiver, in my view, in the way I was looking at it, and I believe is the case, is very limited. And in this case where you have two enhancements, we're not saying that Mr. Corso shouldn't be punished. We're saying that he should not be enhanced to nearly double his sentence, well, actually more than double his sentence, and to actually double his base offense level. And that is why the waiver just doesn't apply in this case. And the statute that the government sent to us all yesterday in their 28J letter, the 39 Section 1008, doesn't apply either. That is simply a statute discussing temporary employees. These are still employees of the Postal Service. It's just temporary employees. They are deemed Postal Service employees because they don't get a formal appointment. And the other section talks about a person who's carrying mail. That could apply to letter carriers only, which Mr. Corso is not. And also, it leads us to a case, United States versus Kirkland, where a defendant was, their conviction for assaulting a United States postal employee was vacated because the person they assaulted was a contract employee. So, you see, there is this big distinction between postal employees, real authentic postal employees who receive training and benefits, and all sorts of formalities that were just not apparent here. And Mr. Corso should not have an enhanced sentence because of that. And it is a miscarriage of justice, what occurred here, because it was a blatant error. Mr. Corso is not an employee of the United States Postal Service. And the position of trust that was added on here, the enhancement for position of trust, should not have been applied. In addition, the delivery truck that he was driving was not a United States Postal Service delivery truck. And if this guideline had wanted to include trucks that were contracted, trucks that were not quite their own trucks, they could have done it, just like they did it in the section below talking about apartment mailboxes that may or may not be owned by the United States Postal Service. This is a Rule 11 violation that is also dramatic because the judge is obligated, the trial judge is obligated to determine Mr. Corso's understanding. The judge isn't just to sit back and have the U.S. Attorney summarize, or not even summarize, just sort of mention, well, there is an appellate waiver. That's all that was mentioned. There was no colloquy, no attempt to even determine whether Mr. Corso really understood this waiver and what he was doing and whether he didn't. And even though the judge may see a signature on a letter, Rule 11 requires more, as this court knows. Okay. Thank you, Ms. Cain. We thank both counsel for excellent arguments and take the matter under advisement. Thank you.